ALFRED H. LINDLEY *vs.* CHARLES R. GROFF and others.

January 14, 1890.

**Descent of Real Property.**—Under Rev. St. 1851, c. 50, § 1, (Pub. St. 1858, c. 37, § 1,) if a person died intestate, seised of lands, leaving surviving him a widow, brothers and sisters, and a mother, but no issue or father, the widow took a life-estate, under subdivision 2, and the remainder of the estate descended, under subdivision 3, in equal shares to the brothers, sisters, and mother.    In such a case the remainder, after the widow's life-estate, descended as if no widow had survived.

Action to determine adverse claims to real property in Minneapolis.    After the decision of a former appeal, (37 Minn. 338,) the action was again tried in the district court for Hennepin county before *Young*, J., from whose findings of fact it appears that on March 28, 1863, A. G. and E. A. Groff became tenants in common of the property.    A. G. Groff died in the summer of 1863, intestate, leaving surviving him Catharine C. Groff, his wife, and Hannah Groff, his mother, and brothers and sisters, but no father or children. After his death his widow conveyed to E. A. Groff all her right, title, and interest in the property, and plaintiff has since acquired all the interest of E. A. Groff, and also all the interest of Hannah Groff, mother of A. G. Groff.    The defendants claim through the brothers and sisters of A. G. Groff.

As conclusions of law the court held that under the statute in force in 1863, A. G. Groff's widow took a life-estate in the property, sub-

ject to which the fee passed to his mother, Hannah Groff, as heir-at-law, both which estates have been conveyed to plaintiff. Judgment was accordingly ordered for plaintiff, a new trial was refused, and defendants appealed.

The statute in force in 1863, (Rev. St. 1851, *c.* 50; Pub. St. 1858, *c.* 37, § 1,) contained these provisions for the descent of the lands of an intestate:

" 2. If he shall leave no issue, his estate shall descend to his widow during her natural lifetime, and after her decease to his father; and if he shall leave no issue or widow, his estate shall descend to his father.

" 3. If he shall leave no issue, *nor widow,* nor father, his estate shall descend in equal shares to his brothers and sisters, and to the children of any deceased brother or sister by right of representation : *provided,* that if he shall leave a mother also, she shall take an equal share with the brothers and sisters."

The Wisconsin law in force at the date of organization of the territory of Minnesota provided that "where there are no children of the intestate, the inheritance shall descend equally to the next of kin in equal degree and those who represent them, computing by the rules of the Civil Law." Laws 1839, p. 134, § 38.

The district court held that as A. G. Groff left a widow, the case was not within the third canon above quoted, nor within any of the provisions of the statutes of this state in force in 1863, and therefore (pursuant to the Organic Act of the territory of Minnesota) the Wisconsin law continued in force here, by virtue of which the mother would inherit as the next of kin, "computing by the rules of the Civil Law."

*S. A. Reed,* for appellants.

*Gilfillan, Belden & Willard,* and *J. M. Shaw,* for respondent.

MITCHELL, J. In view of our decision on a former appeal, and which must be taken as the law of this case, (37 Minn. 338, 34 N. W. Rep. 26,) the only question remaining is, what was the law of descent of real property in this state in 1863, when A. G. Groff died intestate, seised of the land in controversy? He died leaving surviving him a widow, mother, brothers and sisters, but no issue or

father. Appellants' contention is that the case is governed by Rev. St. 1851, c. 50, (Pub. St. 1858, c. 37;) that by the second canon of descent, in section 1 of that chapter, the widow took a life-estate; and that by the third canon of the same section the remainder descended, in equal shares, to the mother, brothers, and sisters. On the other hand the respondent, while conceding that under the second canon the widow took a life-estate, contends that the third canon by its terms only applies to cases where the intestate leaves no widow; that as to the remainder, after the termination of the life-estate of the widow, the statute makes no provision in a case like the present; that this is *casus omissus*, and therefore that resort must be had to the statutes in force in Wisconsin on March 3, 1849, when the territory of Minnesota was organized. But, with due deference to the ingenious argument of learned counsel, we fail to see any such omission in the statute of 1851. This statute, which remained in force in its original form until 1866, was copied from the Wisconsin Statutes of 1849, (which went into effect January, 1850,) which borrowed it from the state of Michigan; and it is a little remarkable, if there be the omission now claimed, that during the many years the statute was in force in these states no such question seems ever to have heretofore arisen or been even suggested. If we take, as respondent does, each subdivision of the section separately and without regard to the others, and ,analyze its language by strict grammatical rules, it must be admitted that no one of them fully covers the present case. But the statute must be considered as a whole, and its construction settled, not upon strict grammatical grounds, but upon the more substantial one of the apparent legislative intent as derived from the whole act. By doing this, and at the same time keeping in mind that the law-makers evidently intended that this statute should cover the entire subject of title to real property by descent, it is not, in our judgment, difficult to determine exactly where the descent was cast under the facts of this case. Where the intestate leaves no issue, it is clear that by canon 2 the widow takes a life-estate. This is all she gets in any case, unless as provided in the eighth canon, in case the intestate leaves no kindred whatever. The statute also provides what and when the father shall take. As there

was no surviving father, these provisions are, in the present instance, inapplicable. The third canon provides what and when the brothers and sisters, and mother, if there also be one, shall take. The evident intent was that they should come in the line of inheritance next after the issue, widow, (to the extent of a life-estate,) and father. It could not have been contemplated (and no reason exists why it should) that the survivorship or non-survivorship of a widow should make any difference in the order of inheritance on part of brothers, sisters, and mother. The only difference it could have been intended that this should make was that in the one case they would take only a remainder, and in the other the whole estate; and it is evident that the word "widow" was inserted solely in view of the priority of the widow's life-estate as declared in the second canon. In short, the evident intention of the statute is that, in a case like the present, after the widow's life-estate is taken out, the remaining part of the estate is to descend, under canon 3, as if no widow had survived. In other words, in respect to the remainder, the case is to be treated on the same footing as if the intestate had left no widow. The result is that the widow of A. G. Groff took a life-estate in the land in controversy, and the remainder descended in equal shares to his brothers, sisters, and mother.

The cause is remanded to the district court, with directions to amend the conclusions of law in accordance with this opinion and render judgment between the parties accordingly.